No. 8657.

EAGER, ELLERMAN & CO. vs. CITY OF NEW ORLEANS.

36 933
52 1274

Plaintiffs, the lessees of the wharves and landings, were under no obligation as such lessees to reconstruct and rebuild the levees fronting on the river and the bulkheads destroyed by a storm of extraordinary violence. And where the city contracted with said lessees independently of said lease and without reference to do said work under the lease, it must pay for it.

APPEAL from the Civil District Court for the Parish of Orleans.
*Lazarus*, J.

*E. H. Farrar* and *J. B. Eustis* for Plaintiffs and Appellees.

*C. H. Buck*, City Attorney, *Wynne Rogers*, Assistant City Attorney,
and *W. H. Rogers*, City Attorney, for Defendant and Appellant.

*Nicholls & Carroll, Amici Curiæ.*

The opinion of the Court was delivered by

Todd, J.   The city of New Orleans is appellant from a judgment in
favor of the plaintiffs for $10,993 65, for work performed by them under
a contract for the rebuilding the levee and bulkheads in front of the
third district of said city, destroyed by a storm on the 6th of February,
1881.

The contract was made and the work done under the following ordi-
nance :

"Whereas, owing to the great volume and height of water now con-
tained within the bed of the Mississippi river, and the probable increase
owing to the rapid rise in the upper rivers, and the imminent danger
now apparent in the third district of this city caused by the recent
heavy storm to the bulkheads and along the river front,

Be it resolved, That the honorable mayor and administrators of com-
merce and improvements be and they are hereby authorized to contract
with any party or parties for the repairing of such bulkheads and
levees of the third district, from Esplanade street to the lower limits of
the city, as are absolutely necessary.

" The same to be performed under the supervision of the administra-
tor of commerce according to specifications to be furnished by the city
surveyor."

There is no question as to the work being done and its value, and
the correctness of the items composing the account for the same ; but
the city resists its payment and denies liability therefor, on the ground
that at the time the work was done the plaintiffs were the lessees of
the wharves and landings along the river front, and under their obliga-
tion as lessees were bound to do this work without charge to the city.

The character of this storm and the destruction caused by it, and
which are proper subjects for consideration in this case, will fully ap-
pear from the following evidence extracted from the record :

Mr. Pilié testifies that he inspected the damage caused by the storm
on the day of its occurrence.   He was asked if there was any pressing

need of making the repairs; he answered: "Yes; there was pressing need, as the river was rising then." He was asked, "Why was that need pressing to have that work done immediately?" He answered: "To prevent an overflow of the city."

He testifies further that this storm was a "tremendous hurricane."

Extracts from the signal office of the United States at New Orleans:

February 5th—Gale began at 5 a. m.; highest velocity, 52 miles at 11 a. m.; on the 6th gale ended at 1:45 p. m., 6th.

February 7th—Gale began 4:25 a. m.; highest velocity, 31 miles at 3:15 p. m.; 7th, gale ended at 4:15 p. m. same day.

"Shipping remained in port; portion of city under water; watch tower blown down; railroad tracks interrupted; bridges destroyed; 52 miles per hour is the highest velocity on record in New Orleans' signal office for a period of ten years."

Brosnan, city surveyor, testifies: "I know that the levees and bulkheads were all washed away and destroyed by the action of the water caused by the wind." "In disconnected places the damage was fearful." "In some places the destruction was complete; in a few places it was only partial."

The question is, whether the plaintiffs, under their contract as lessees of the wharves, were bound to do the work of rebuilding and reconstructing the levees and bulkheads destroyed by the cause aforesaid. It is apparent from the ordinance quoted above, and the contract for the work under it, and other evidence in the record, that the city authorities did not, at the time, believe that the plaintiffs were so bound.

We have carefully examined the contract under which the wharves were leased.

The portion of it bearing more directly on the question of plaintiffs' responsibilities in the premises will appear in the following clause, being an extract from section 12 of ordinance 3121, which, by express terms, was made a part of the contract, to wit;

"The repairs of the levee, required to be made under this ordinance, shall consist in grading the same according to the grades already established; in covering the same hard substances, such as rock, lake or oyster shells and gravel; *in keeping the same always in good order by filling up with river sand all parts of the same which may cave in or sink below the grades* aforesaid; and in keeping the bulkheads on the outside of same always in good order and condition; and whenever the batture shall form so as to require the levee to be extended, the transferree shall, on the order of the City Council, fill up such parts of the batture

and build such levees as said City Council may deem necessary, *as well as all new bulkheads.*"

A fair construction of this clause, aided by an examination of other portions of the entire contract, does not seem to warrant the conclusion that the lessees were under any obligation to work on the levees except with reference to keeping the wharves in repair, and that it did not impose upon them the duty of rebuilding levees to protect the inhabitants of the city against overflow. The only levees required to be built under its terms, and the only new bulkheads to be constructed, were such as might become necessary by the forming of new batture.

We see no reason for disturbing the judgment of the District Court, and it is therefore affirmed, with costs.

Judgment affirmed.

---

## ON REHEARING.

The record does not supply the evidence essential to sustain the preference granted by the judgment over other creditors on the revenues of the city for 1881, and the judgment is amended by annulling that portion of the judgment, without prejudice to the right of plaintiffs to assert such rank and preference on said revenues as they are entitled to under the law.

FENNER, J. Neither in granting this rehearing nor since have we felt any doubt as to the correctness of our original opinion upon any of the points therein determined. But we omitted to consider one point, which, although urged in oral argument, had not been referred to in the briefs of counsel, and thus escaped our attention.

The judgment appealed from correctly condemns the defendant to pay the amount claimed "out of the revenues of the city of New Orleans of the year 1881," but it contains these additional words, viz.: "As of date of May 1st, 1881, the date at which said amount should have been paid; that is to say, it shall be paid out of said revenues as if an ordinance of appropriation had been made for this purpose and promulgated on May 1st, 1881, and in preference to all ordinances of appropriation passed subsequent to that date."

The city urges that the above quoted portion of the judgment is illegal and in violation of the terms of Act No. 38 of 1879.

Plaintiffs object that the city is without interest, and consequent right, to urge this point. We cannot agree with them. It is the right and duty of the city to conform to the law in the administration of her finances and to oppose any judicial demand requiring her to violate the law.

The act 38 of 1879 requires the city to make in December of each year detailed estimates of receipts and expenditures, and declares that

the adoption of these estimates shall be considered as an appropriation of the amounts therein stated for the purposes therein set forth, and also prohibits the diversion of said appropriations from the purposes stated for any cause or reason whatsoever. It further provides for subordinate specific acts of appropriation and declares that such appropriations shall be paid in the order of the adoption of the ordinances making them.

Nice questions might arise as to whether the city could affect the rank of budget creditors whose claims were ripe for payment by wrongfully refusing or postponing the passage of specific ordinances of appropriation.

Possibly plaintiffs may have suffered wrong in this respect and may be entitled to some relief.

But certainly this record is barren of the essential evidence necessary to determine or measure their rights or relief.

The city denies that plaintiffs are budget creditors'. Plaintiffs assert that they are. The budget or detailed estimates of receipts and expenditures for the year are not in evidence or found in the record.

How should we determine their dispute otherwise than by mere guess work?

Nor does the record furnish any evidence as to the nature of the various ordinances of appropriation over which the judgment assigns a preference in favor of plaintiffs.

To affirm this portion of the judgment would be striking in the dark without knowing whom we might injure.

These are matters affecting the execution of the judgment, and in striking therefrom the objected portion we shall do so without prejudice to plaintiffs' right to assert and enforce such rank and preference on the revenues of 1881 as the law entitles him to.

It is therefore ordered that our former decree herein be annulled and set aside; and it is now ordered, adjudged and decreed that the judgment appealed from be amended by striking therefrom the words " as of date May 1st, 1881, the date at which said amount should have been paid; that is to say, it shall be paid out of said revenues as if an ordinance had been made for this purpose and promulgated on May 1st, 1881, and in preference to all ordinances of appropriation passed subsequent to that date." This amendment, however, to be without prejudice to the right of plaintiffs to assert such rank and preference over other creditors on the revenues of 1881 as they may be entitled to under the law. And, as thus amended, that said judgment be now affirmed, plaintiffs and appellees to pay costs of this appeal.